Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000918
30-JUN-2014
08:12 AM

NO. CAAP-12-0000918

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DUANE K. PUA, SR., Claimant-Appellant, v.
PUNA CERTIFIED NURSERY, INC., Employer-Appellee,
and
FIREMAN'S FUND INSURANCE COMPANY, Insurer-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2010-023 (H); (1-08-00888))


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Leonard and Reifurth, JJ.)

On October 24, 2008, Claimant-Appellant Duane K. Pua, Sr. ("Pua") filed a WC-5 Employee's Claim For Workers' Compensation Benefits form with the Department of Labor and Industrial Relations ("DLIR"), seeking workers' compensation benefits relating to an injury described as "stress unable to face boss and function [at] work." He explained that the reason for filing the WC-5 form was "stress due to verbal threats by boss and recorded threats by boss," which, Pua alleged, occurred on October 23, 2008, at 6:55 p.m. when he "[c]ame home from work[, and] got message from wife to call boss. Lead to verbal threats on phone, also made to wife."

On January 4, 2010, the DLIR's Disability Compensation Division issued its decision ("Decision") denying both Pua's claim for benefits and the request for credit and costs submitted by Pua's employer, Puna Certified Nursery, Inc. ("Employer"). On January 19, 2010, the DLIR acknowledged receipt of Pua's

January 15, 2010 letter appealing from the January 4, 2010 Decision.

On May 5, 2010, the Labor and Industrial Relations Appeals Board ("Board") issued its pretrial order, setting out the issues in the case, various deadlines including a medical reports submission deadline of January 12, 2011, and a trial date of March 9, 2011. By order dated March 14, 2011, at Pua's request, the trial date was continued to March 27, 2012. The order noted that "[a]ll issues, and other deadlines shall remain as previously identified in the Board's Pretrial Order of May 5, 2010."

On June 16, 2011, Employer filed a motion to strike medical records that had been submitted after the medical reports submission deadline of January 12, 2011. Pua filed no opposition to the Employer's motion. On June 29, 2011, the Board granted Employer's motion.

By letter received on March 23, 2012, Pua informed the Board that he would not attend the March 27, 2012 trial because he did not have the form of identification necessary for him to fly to Oahu. Pua did not request a further continuation of the trial, noting that he had submitted all of his evidence. On October 5, 2012, the Board issued its Decision and Order, concluding that (1) Pua "did not sustain a personal psychiatric injury on October 23, 2008, arising out of and in the court of employment"; (2) Employer was entitled to a credit/reimbursement of $280.00 for travel expenses advanced to Pua; and (3) Pua was not liable to Employer for the costs of attending the Disability Compensation Division hearing on July 21, 2009.

Pursuant to Hawaii Revised Statutes §§ 386-88 (Supp. 2013) and 91-14 (2012), Pua appeals to this court from the Decision and Order. On appeal, Pua appears to assert that the Board erred in concluding that he did not sustain a personal psychiatric injury on October 23, 2008, arising out of and in the course of his employment.[1]

---

[1] Pua's opening brief fails to comply in many respects with the requirements of Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b). Failure to comply with HRAP Rule 28 may constitute grounds for dismissal of

(continued...)

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we affirm the Decision and Order and resolve Pua's appeal as follows:

In support of the Decision and Order, the Board issued the following Findings of Fact:

> 1. On October 23, 2008, [Pua] was employed as a truck driver for Employer. [Pua] alleged that on that date he sustained a work injury arising from a telephone conversation with his boss. Employer denied liability for a work injury.
>
> . . . .
>
> 3. On November 28, 2008, [Pua] sought treatment with Julia D. Crawford, M.D., a family practice physician. [Pua] informed Dr. Crawford that on the date of the alleged incident, the owner of Employer called him on his cell phone, but he did not receive the phone call. When he arrived home, he learned his boss had spoken impolitely to [Pua's] wife. When [Pua] called his boss, his boss yelled at him, cursed and called him names.
>
> [Pua] informed Dr. Crawford that he had trouble sleeping, frequently thought about the event, and felt depressed and anxious. Dr. Crawford's assessments were acute stress and adult adjustment disorder.
>
> 4. On A [sic] WC-2 Physician's First Report dated May 14, 2009, Dr. Crawford stated that the October 23, 2008 was the only cause of [Pua's] condition, which she diagnosed as "stress disorder, acute."
>
> 5. Joseph P. Rogers, Ph.D., a psychologist, examined [Pua] at Employer's request. In his report dated June 29, 2009, Dr. Rogers described [Pua's] recollection of the telephone call with his boss:
>
>> [Pua] then called [his boss] back, and [his boss] reportedly asked: "Why didn't you return my call?" [Pua] explained that [his boss] was trying to give him a job assignment and was yelling and searing [sic] at him saying: "You're a f---ing a--hole! You're a f---ing pr---! [Pua] asked [his boss] why he was searing [sic] at him, and [his boss] reportedly replied: "F--- you! You f---ing pr---! F--- you! You f---ing a--hole! [Pua] was shocked and commented "that should have never happened."

---

1/ (...continued)
the appeal. *See Bettencourt v. Bettencourt*, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995). However, "inasmuch as 'this court has consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible,' we address the issues [that] the parties raise on the merits." *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001) (original brackets omitted) (quoting *Housing Fin. & Dev. Corp. v. Ferguson*, 91 Hawai'i 81, 85-86, 979 P.2d 1107, 1111-12 (1999)).

(Profane vulgarities modified by the Board.)

. . . [Pua] felt he needed to do something but did not think [his boss] was going to harm him. According to Dr. Rogers, [Pua] is a "very large, muscular man who knows martial arts and played defensive end in professional football. He acknowledges that he is much larger than [his boss].)" [sic] [Pua] also stated that he was not ever afraid of [his boss].

. . . [Pua] later followed up with Dr. Crawford. His symptoms were that he could not sleep and "couldn't deal with the fact that my boss did this to me." Dr. Crawford prescribed sleeping bills [sic], but has did not [sic] refer [Pua] for psychiatric or psychological treatment.

. . . .

[Pua] also informed Dr. Rogers of childhood incidences [sic] of physical and emotional abuse.

Dr. Rogers diagnosed an occupational problem and opined that:

". . . there is no objective evidence that the 10/23/08 incident caused [Pua] to develop symptoms of emotional distress that rose to a level of a diagnosable mental disorder or emotional disorder. Even though he reacted with anger and dismay at the abusive swearing and yelling by his supervisor, [Pua] never described any symptoms consistent with an Anxiety Disorder or Depressive Disorder. . . [Pua] certainly did not develop an Acute Stress Disorder. . . ."

6. At the trial before the Board on March 27, 2012, [Pua's boss] admitted utilizing profanities and foul language in his conversation with [Pua]. . . . .

. . . .

9. The Board credits the diagnosis and opinion of Dr. Rogers over those of Dr. Crawford and finds that [Pua's] symptoms did not rise to the level of a diagnosable mental, emotional, psychiatric, or psychological disorder.

The Board issued the following Conclusions of Law, in relevant part:

1. The Board concludes that [Pua] did not sustain a personal psychiatric injury on October 23, 2008, arising out of and in the course of employment.

. . . .

In this case, having credited the diagnosis and opinion of Dr. Rogers over those of Dr. Crawford, the Board has determined that [Pua] has failed to carry and meet the initial burden of establishing the existence of a personal mental injury.

. In so concluding, however, the Board does not excuse or condone the vulgar language utilized by [Pua's boss]. He was offensive, uncouth, rude, ignorant, and unprofessional. His words were uncalled for, and may have, given a different factual scenario, resulted in a compensable work injury.

4

Pua appears to argue that the Board erred in crediting Dr. Rogers' opinion over that of Dr. Crawford and other health care providers. We interpret this argument as comprising two issues: (1) whether the Board abused its discretion in striking the medical reports submitted after the medical report submission deadline; and (2) whether the Board clearly erred in crediting Dr. Rogers' diagnosis and opinion over those of Dr. Crawford. We address the issues in turn.

(1) Pua contends that he "has now provided additional information to the Appelles [sic], that he previously provided to the [Board] in March 2011 Including [sic] medical Records [sic] that are attached here to as EXHIBIT "A"[.]" To the extent that Pua contends that the medical reports in "Exhibit A" should have been included and considered, we conclude that the Board did not abuse its discretion.

Hawaii Administrative Rules ("HAR") Rule § 12-47-41 provides:

> The [B]oard shall not be bound by statutory and common law rules relating to the admission or rejection of evidence. The [B]oard may exercise its own discretion in these matters, limited only by considerations of relevancy, materiality, and repetition, by the rules of privilege recognized by law, and with a view to securing a just, speedy, and inexpensive determination of the proceedings.

Haw. Admin. R. § 12-47-41. Therefore, "the [Board] has 'wide discretion in managing evidence,' and the [Board's] evidentiary rulings should be upheld, absent a showing of an abuse of discretion." *Athens v. Int'l Archaeological Research Inst., Inc.*, No. 29495, 2011 WL 5997078, at *1 (Haw. Ct. App. Nov. 30, 2011) (SDO) (quoting *Sugano v. State, Dep't of Atty. Gen.*, No. 29246, 2010 WL 231100, at *3 (Haw. Ct. App. Jan. 22, 2010) (SDO)) (original brackets omitted). "More generally, HAR § 12-47-1 provides that these rules 'shall be construed to secure the just, speedy, and inexpensive determination of every proceeding.'" *Gabriel v. Cnty. of Hawai'i, Dep't of Parks & Recreation*, No. 29789, 2013 WL 6008490, at *6 (Haw. Ct. App. Nov. 12, 2013) (mem. op.) (quoting Haw. Admin. R. § 12-47-1).

HAR § 12-47-22(b)(3) provides that "[m]edical report deadline means the date that all medical reports or records shall be filed at the [B]oard." Haw. Admin. R. § 12-47-22(b)(3). If

5

the Board sets a medical report submission deadline in a pre-trial order and consistently maintains that deadline, it is not an abuse of discretion for the Board to disregard late-filed medical report submissions. *See* Haw. Admin. R. § 12-47-22(c) ("The pretrial order shall control the subsequent course of the appeal, unless modified by the board at the trial or prior thereto to prevent manifest injustice."); *Tautua v. BCI Coca-Cola Bottling Co. of Los Angeles*, No. 30291, 2012 WL 2308162, at *2 (Haw. Ct. App. June 18, 2012) (SDO) (Board did not abuse discretion in excluding medical reports, when Board made order amending the initial pretrial order, clearly setting medical submission deadline for course of the appeal). Here, the Board set the medical report submission deadline at January 12, 2011, and maintained the deadline thereafter.

Furthermore, the untimely medical reports indicate that they were prepared in 2009 and 2010, before the January 12, 2011 deadline. Pua failed to provide a reasonable explanation for his failure to submit the medical reports until almost sixty days after the deadline, and well after they were prepared, nor does he argue that he was prevented from obtaining the documents in a timely manner. *See Gabriel*, No. 29789, 2013 WL 6008490, at *7 (holding that the Board did not abuse its discretion in excluding an untimely medical report when the claimant did not provide a reasonable explanation for her failure to obtain the report before the discovery deadline). Moreover, when Employer moved to strike the medical records, Pua did not submit a responsive memorandum.

Therefore, under the circumstances of this case, the Board did not abuse its discretion in ordering that untimely medical reports be stricken from the record.

(2) Pua appears to also argue that the Board erred in crediting Dr. Rogers' opinion over that of Dr. Crawford in making its determination, contending that the Findings of Fact and Conclusions of Law were "only based on Dr. Rogers['] opinion." The Board's evaluation of the weight and credibility of the evidence is not clearly erroneous.

> It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in

6

favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

*Nakamura v. State*, 98 Hawai'i 263, 268, 47 P.3d 730, 735 (2002) (format altered) (quoting *Igawa v. Koa House Rest.*, 97 Hawai'i 402, 409–410, 38 P.3d 570, 577–578 (2007)); see *also Moi v. State, Dept. of Public Safety*, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008) ("[W]e give deference to the [Board's] assessment of the credibility of witnesses and the weight the [Board] gives to the evidence.").

Therefore,

The Board's Decision and Order, filed October 5, 2012, is affirmed.

DATED:  Honolulu, Hawai'i, June 30, 2014.


On the briefs:

Duane K. Pua, Sr.,
Pro Se Claimant-Appellant.

Robert E. McKee, Jr.
(Law Office of Robert E.
McKee, Jr.)
for Employer-Appellee and
Insurer-Appellee

Chief Judge

Associate Judge

Associate Judge